**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| APRESS MEDIA, LLC; CENGAGE LEARNING, INC.; ELSEVIER INC.; HACHETTE BOOK GROUP, INC.; HARPERCOLLINS PUBLISHERS LLC; JOHN WILEY & SONS, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN PUBLISHING GROUP, LLC D/B/A MACMILLAN PUBLISHERS; MCGRAW HILL LLC; PEARSON EDUCATION, INC.; PENGUIN RANDOM HOUSE LLC; SIMON & SCHUSTER, LLC; AND TAYLOR & FRANCIS GROUP, LLC, <br><br> Plaintiffs, <br><br> v. <br><br><br> WELIB and DOES 1-10, <br><br> Defendants. | Civil Action No. 1:26-cv-05064 <br><br> **COMPLAINT FOR:** <br><br> **Direct Copyright Infringement** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Apress Media, LLC; Cengage Learning, Inc.; Elsevier Inc.; Hachette Book Group, Inc.; HarperCollins Publishers LLC; John Wiley & Sons, Inc.; Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning; Macmillan Publishing Group, LLC d/b/a Macmillan Publishers; McGraw Hill LLC; Pearson Education, Inc.; Penguin Random House LLC; Simon & Schuster, LLC; and Taylor & Francis Group, LLC (collectively, "Plaintiffs" or "Publishers"), by and through their undersigned counsel, for their Complaint against WeLib and Does 1 through 10 (collectively, "Defendants"), hereby allege on personal knowledge as to matters relating to themselves and on information and belief as to all other matters:

## NATURE OF THE ACTION

1.      Plaintiffs are all member companies of the Association of American Publishers, the mission of which is to be the voice of American publishing on matters of law and public policy, especially copyright. Publishers bring this action to stop the mass distribution by Defendants of millions of legally protected literary works owned by Publishers that were unlawfully copied from physical and digital books and journals. Publishers' action is now especially critical in light of reports that major large language model developers used illegal sites like WeLib as illicit sources of training data.

2.      Literary works[1] are invaluable works of authorship that have been squarely protected by U.S. copyright law since the Nation's founding. They are often embodied in physical or digital books and journals. Essential to our society, they are the cornerstone of our culture and play a critical role in education and the exchange of information. They teach and entertain us, transport us to new worlds, broaden our horizons, provide us with perspective, and promote an ever-growing body of literary and scientific knowledge in service to the public. Importantly, literary works are not self-generating. They require the creative, intellectual, and business investments of authors and publishers. These authors and publishers devote untold hours of expertise, time, and talent to imagine, write, and make them available to readers, through a variety of traditional and new formats and access models. In bearing the costs and risks of such endeavors, publishers operate with the confidence and expectation that their copyrights are enforceable.

---

[1] "'Literary works' are works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied." 17 U.S.C. § 101.

3.      Defendants' entire business is the illegal copying and distribution of literary works. WeLib was created after its operators copied the source code and most of the contents of the Notorious Pirate Site,[2] Anna's Archive. In accordance with their belief that "literature belong[s] to everyone," Defendants have deliberately violated the copyright law of the United States.[3]  Defendants boast that they have reproduced "an endless collection of literature, research papers, and education materials," none of which they own or have licensed.[4]  They claim this stolen collection spans "every genre – from timeless masterpieces to the latest scholarly publications."[5]  Indeed, Defendants have made clear that they operate with one purpose: to illegally obtain, reproduce, distribute, and profit from works of authorship without regard to the authors, illustrators, publishers, and other creators who own, exercise, license, and make a living from their intellectual property.

4.      The scale of Defendants' infringement is staggering. Through its various websites—including welib.org, welib.st, and welib-public.org (together, the "Website")—WeLib hosts over 43 million books and 98 million papers.[6]  Its stolen collection of literary works has purportedly attracted over 80,000 active monthly users.[7]  According to the Website, WeLib's users have illegally accessed over 51 million books in the last month alone, or an average of over

---

[2] "Notorious Pirate Site" is a term generally used by rightsholders to describe the most egregious internet services whose businesses are based on providing copies or access to content without the consent of the copyright holders. Rightsholders list Notorious Pirate Sites in submissions to the United States Trade Representative (USTR) for its use in compiling the Special 301 Report pursuant to Section 182 of the Trade Act of 1974, as amended (the Trade Act, 19 U.S.C. § 2242) and the Notorious Markets Report for Counterfeiting and Piracy. *See, e.g.*, International Intellectual Property Alliance Written Submission in Response to USTR's Request for Comments and Notice of a Public Hearing Regarding the 2022 Special 301 Review (January 31, 2022), at 19, https://www.iipa.org/files/uploads/2025/11/Special-301-2025.pdf; Association of American Publishers 2024 Special 301 Out-of-Cycle Review of Notorious Markets at 2-4, https://www.regulations.gov/comment/USTR-2024-0013-0005.

[3] *WeLib-Public Homepage*, WELIB, https://welib-public.org (last visited June 11, 2026).

[4] *WeLib-Public Homepage*, WELIB, https://welib-public.org (last visited June 11, 2026).

[5] *WeLib-Public Homepage*, WELIB, https://welib-public.org (last visited June 11, 2026).

[6] *Homepage*, WELIB, https://welib.org/ (last visited June 11, 2026).  Defendants' Website is accessible worldwide, including from the United States.

[7] *WeLib-Public Homepage*, WELIB, https://welib-public.org (last visited June 11, 2026).

1.7 million books per day.[8] WeLib also distributed at least another 14 million literary works to its users in the last month alone via free downloads, and an untold number more through paid downloads:



Books Read
51,714,317
Last Month

Free Downloads
14,529,211
Last Month

5. Plaintiffs bring this case to protect and enforce their copyrights and to stop Defendants' intentional, widespread, and ongoing unlawful reproduction and distribution of literary works in the United States, to the detriment of Publishers, authors, and the public.

## THE PARTIES

### A. Plaintiffs

6. Plaintiffs are thirteen leading publishers of books and journals in the United States. Working closely with their authors, Plaintiffs source, develop, edit, publish, reproduce, market, and distribute tens of thousands of literary works per year, across the full spectrum of genres and topics and through a variety of formats, access, and delivery models.

7. Plaintiff Apress Media, LLC ("Apress") is a part of Springer Nature, one of the world's leading publishers of scientific and technical books with offices at One New York Plaza, New York, New York 10004. With a portfolio of over 2,700 journals and over 220,000 books, Springer Nature is a global leader in academic and scientific publishing.

8. Plaintiff Cengage Learning, Inc. ("Cengage") is a Delaware corporation with its principal place of business at 10650 Toebben Drive, Suite A, Independence, Kentucky 41051.

---

[8] *Donate*, WELIB, https://welib.org/donate (last visited June 11, 2026).

Cengage is a prominent American educational technology and content provider. It is one of the largest college textbook publishers in the United States and specializes in delivering digital and print learning solutions for various markets, including K-12, higher education, vocational training, and library services.

9.      Plaintiff Elsevier Inc. ("Elsevier") is a Delaware corporation with its principal place of business at 101 Park Avenue, New York, New York 10178. Elsevier is a premier global academic publishing company and information analytics business. Founded in 1880, the company specializes in publishing technical, medical, and scientific content, with a portfolio that includes prestigious academic research journals such as The Lancet and Cell Press. Elsevier publishes more than 600,000 articles annually and its catalog receives over one billion annual downloads.

10.      Plaintiff Hachette Book Group, Inc. ("Hachette") is a Delaware corporation with its principal place of business at 1290 Sixth Avenue, New York, New York 10104. With a history stretching back to 1837, Hachette is a leading general-interest publisher of books, games, puzzles, and other products. Hachette books and authors have won Pulitzer Prizes, National Book Awards, Newbery Medals, Caldecott Medals, and Nobel Prizes. Its many publishing imprints include prominent brands such as Little, Brown and Company; Moon Travel; Running Press; Workman Publishing; Union Square; Little, Brown Books for Young Readers; Grand Central Publishing; Basic Books; Public Affairs; Orbit; FaithWords; and Center Street.

11.      Plaintiff HarperCollins Publishers LLC ("HarperCollins") is a Delaware limited liability company with its principal place of business at 195 Broadway, New York, New York 10007. HarperCollins has more than 200 years of history in the book publishing industry and the company now operates more than 120 imprints and brands in 17 countries worldwide. Each year,

HarperCollins publishes approximately 10,000 new books in more than a dozen languages and boasts a catalogue of more than 200,000 titles in print and digital formats. Working across a wide range of genres, authors published by HarperCollins have won the Nobel Prize, the Pulitzer Prize, the National Book Award, the Newbery and Caldecott Medals, and the Man Booker Prize, among other honors.

12.     Plaintiff John Wiley & Sons, Inc. ("Wiley") is a New York corporation with its principal place of business at 111 River Street, Hoboken, New Jersey 07030. Founded in 1807 in Manhattan, Wiley has over 200 years of experience publishing scientific, professional, and education books and journals in print and digital formats. Wiley has published works by over 450 Nobel Laureates. Today Wiley is known for publishing not only the *For Dummies* series but also many important journals and textbooks. Wiley publishes over 1,800 peer-reviewed scholarly journals and over 2,000 new books each year. It currently offers over 120,000 titles.

13.     Plaintiff Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning ("Macmillan Learning") is a New York limited liability company with its principal place of business at 120 Broadway, New York, New York 10271. Macmillan Learning creates research-backed tools, content, and services that help make learning meaningful, measurable, and accessible. The company works closely with educators to design engaging, effective learning experiences that are tested in classrooms and shaped by real student needs. With a legacy spanning more than 75 years, including respected imprints such as Bedford/St. Martin's, W.H. Freeman, Worth Publishers, and Hayden-McNeil, Macmillan Learning inspires what's possible for every learner.

14.     Plaintiff Macmillan Publishing Group, LLC d/b/a Macmillan Publishers ("Macmillan Publishers") is a New York limited liability company with its principal place of

business at 120 Broadway, New York, New York 10271. Macmillan Publishers is a leading publishing company and home to some of the world's most cherished authors and creators. It publishes a wide range of genres and formats for every kind of reader, from adult fiction and nonfiction to many inspired children's books across eight divisions: Celadon Books; Farrar, Straus & Giroux; Flatiron Books; Henry Holt; Macmillan Audio; Macmillan Children's Publishing Group; The St. Martin's Publishing Group; and Tor Publishing Group. Among the Works in Suit, Macmillan Publishers' titles feature bestselling, award-winning literary talent, including recipients of the Nobel Prize, the Man Booker Prize, the Pulitzer Prize, the National Book Award, the Newbery Medal, and the Caldecott Medal.

15.    Plaintiff McGraw Hill LLC ("McGraw Hill") is a Delaware limited liability company with its principal place of business at 8787 Orion Place, Columbus, Ohio 43240. McGraw Hill is a leading global provider of education solutions for preK-12, higher education, and professional learning. The company provides trusted, high-quality content and personalized learning experiences that use data, technology and learning science to help students progress towards their goals. Founded over 135 years ago, McGraw Hill makes its learning solutions available in more than 80 languages in over 100 countries around the world.

16.    Plaintiff Pearson Education, Inc. ("Pearson"), the world's lifelong learning company, is a Delaware corporation with its principal place of business at 221 River Street, Hoboken, New Jersey 07030.  Pearson has decades of history in publishing academic textbooks and digital learning experiences used to help millions of higher education students every year. Pearson partners with thousands of expert authors, including winners of the Nobel Prize, Turing Award, and Pulitzer Prize, to create learning materials across academic disciplines, with

particular strength in science, technology, engineering and math (STEM). Pearson serves customers in nearly 200 countries with digital content, assessments, qualifications, and data.

17.     Plaintiff Penguin Random House LLC ("Penguin Random House") is a Delaware limited liability company with its principal place of business at 1745 Broadway, New York, New York 10019. Penguin Random House traces the history of some of its imprints back to the mid-nineteenth century and has published numerous Nobel Laureates, Pulitzer Prize winners and landmark works of the twentieth century including the first authorized edition of James Joyce's *Ulysses* in the English-speaking world. The portfolio operated by Penguin Random House has grown to encompass nearly 275 independent imprints and brands across five continents. Penguin Random House publishes 15,000 new titles per year—catering to readers of all ages and at every stage of life—and sells close to 800 million print books, audiobooks, and eBooks annually. It has published hundreds of the most widely read authors in the world.

18.     Plaintiff Simon & Schuster, LLC ("Simon & Schuster") is a New York limited liability company with its principal place of business at 1230 Avenue of the Americas, New York, New York 10020. Simon & Schuster was founded in New York City in 1924 and has been the home of such famous authors as F. Scott Fitzgerald, Ernest Hemingway, Hunter S. Thompson, Shel Silverstein, and Dan Brown, among many others. It is a global leader in general interest publishing, dedicated to providing the best in fiction and nonfiction for readers of all ages.

19.     Plaintiff Taylor & Francis Group, LLC ("Taylor & Francis") is a Delaware limited liability company with offices at 605 Third Avenue, New York, New York 10158. Taylor & Francis is part of Taylor & Francis Group, one of the world's leading academic publishers. Taylor & Francis Group publishes more than 2,500 journals and 8,000 new books each year.

8

**B. Defendants**

20.     Defendant WeLib holds itself out as a "non-profit" organization.[9] As an organization dedicated to online piracy, WeLib has taken efforts to stay anonymous. Accordingly, its incorporation status and principal place of business are unknown.

21.     Defendants Does 1-10 are individuals who own and/or operate WeLib and who are responsible for the illegal conduct alleged herein. Plaintiffs currently are unaware of the true names or addresses of Does 1-10 and, for that reason, sue them using the fictitious designations Does 1-10. If Publishers ascertain their identities, Publishers will seek leave of the Court to amend this Complaint to include Defendant Does 1-10 as named defendants.

## JURISDICTION AND VENUE

22.     Publishers bring a claim against Defendants for direct copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

24.     This Court has personal jurisdiction over Defendants pursuant to New York Civil Practice Law and Rules ("CPLR") § 302(a)(1) because Defendants transact business in New York State, including accepting payment from New York residents.

25.     This Court also has personal jurisdiction over Defendants pursuant to CPLR § 302(a)(3). WeLib is operated by individuals who reside outside of the United States and who committed the tortious acts that give rise to Publishers' claims outside of New York. Defendants have caused injury within New York to Publishers that maintain their principal place of business in, or conduct substantial business in, the state, including by allowing internet users to download

---

[9] *Donate*, WELIB, https://welib.org/donate (last visited June 11, 2026).

Publishers' Works in Suit for free on the infringing Website and knew or reasonably should have known its acts would have consequences in this State, all while deriving substantial revenue from interstate commerce.

26. Pursuant to CPLR § 302(a)(3)(i), Defendants regularly do or solicit business in New York State, engage in a persistent course of conduct in New York State, and derive substantial revenue from services rendered in New York State. For example, WeLib distributes copyrighted content to New York State residents without authorization, and it further accepts payments from New York residents in exchange for faster downloads of infringing content.

27. Pursuant to CPLR § 302(a)(3)(ii), Defendants expect or should reasonably expect that their tortious acts would have consequences in New York State, because Defendants' conduct has caused injury to Plaintiffs who maintain their principal places of business in, or conduct substantial business in, the state. Defendants also derive substantial revenue from interstate or international commerce.

28. In the alternative, this Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2), as this action involves claims arising under federal law and Defendants have targeted their unauthorized distribution of copyrighted material to a United States audience and the Website is visited more than a million times each month by users in the United States. Defendants have also accepted payment from users in the United States, transacted with third parties in the United States, and engaged in the unauthorized reproduction and distribution of Works in Suit in the United States. Furthermore, according to data from the website tracking service Similarweb, the primary websites that comprise WeLib collectively have over 7 million monthly visitors, nearly 20 percent of whom are in the United States. More

of WeLib's users are in the United States than are in any other country, making the United States the single largest market for WeLib.

29.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a), including because a substantial part of the events or omissions giving rise to the claims occurred in this District and because Defendants are subject to personal jurisdiction in this District and thus may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(c)(1) because, to the best of Publishers' knowledge, no Defendants are residents of the United States.

## FACTUAL BACKGROUND

### A. Publishers' Businesses and Copyrights

30.    In the United States, the publishing industry dates back to the dawn of our democracy. Many of the publishing houses that are Plaintiffs in this case have long and storied histories spanning many decades, and in some instances over a century.

31.    Publishers develop, market, distribute, license, and sell literary works in physical and digital formats, in close collaboration with their respective authors. Publishers invest considerable time and money into publishing their works, including in content creation, advertising, marketing, promotion, and distribution. Publishers expend these resources in reliance on the enforceable exclusive rights afforded by copyright law, which safeguard the commercial viability of their efforts. The steadfastness of the law, in turn, allows Publishers to continue to invest in the production of new literary works, to the benefit of society.

### B. The Works in Suit

32.    Publishers own or control the copyrights to many works of authorship under U.S. law, including many of the world's most important and popular works of literature and

11

invaluable educational, scholarly, and scientific texts. These rights include the exclusive rights to reproduce and distribute in the United States in physical and e-book formats the literary works listed in Exhibit A (the "Works in Suit"). The 130 Works in Suit are a small sample of the works for which Publishers own or exclusively control copyrights, representative of the enormous scale of piracy perpetrated by Defendants.

33.    The Works in Suit represent a cross-section of the exceptional literary works that are made possible by a functioning publishing ecosystem, from perennial classic novels to more recent highly acclaimed works of fiction, non-fiction, children's works, and much more. Some of the most awarded works of fiction ever published find their place among the Works in Suit, including *The Corrections* by Jonathan Franzen, published by Macmillan Publishers. This novel won the 2001 National Book Award for Fiction, the 2002 James Tait Black Memorial Prize, and was a finalist for the 2002 Pulitzer Prize for Fiction. It was also included in *TIME* magazine's list of the 100 best English-language novels since 1923. The Works in Suit also include the bestselling novel *Presumed Innocent* by Scott Turow, published by Hachette; the Pulitzer Prize winning *Empire Falls* by Richard Russo, published by Penguin Random House; the occult staple *The Modern Guide to Witchcraft* by Skye Alexander, published by Simon & Schuster; and the young adult novel *Partials* by Dan Wells, published by Harper Collins.

34.    The Works in Suit also contain outstanding examples of educational books that are core to many high school, college, and university academic programs, as well as scientific, medical, and technical journal articles that are important to further scientific study and research. The Works in Suit contain multiple titles from the popular *For Dummies* series published by Wiley, which have taught intrepid readers the basics of everything from English grammar to PowerPoint. They also include some of the most widely used textbooks and academic works

from multiple fields, including *International Economics* by James Gerber, published by Pearson; *Atlas of the Human Body* by Branislav Vidic, published by Elsevier; *Film History: An Introduction* by Kristin Thompson, David Bordwell, and Jeff Smith, published by McGraw Hill; *Business Law: Text and Cases* by Kenneth Clarkson, published by Cengage; *Universe* by Roger Freedman and Robert Geller, published by Macmillan Learning; *Introduction to Search Engine Marketing and Adwords* by Todd Kelsey, published by Apress; and *Explorations in Computing* by John Conery, published by Taylor & Francis.

35.    Publishers' works are widely available through legitimate channels. Publishers' works are available for sale in the United States, including from authorized online and physical retailers, as well as the Publishers' direct sales channels.

36.    The Works in Suit have all been properly registered with the U.S. Copyright Office, and were registered before the acts of infringement described herein. The Works in Suit were published with copyright notice pages pursuant to 17 U.S.C. § 401, containing a (c) copyright symbol, the date of first publication and the rightsholder's name. This information, among other indicia of ownership, is sufficient to alert users, including Defendants, that these works are protected by copyright.

37.    All of the Works in Suit have been downloaded, reproduced, and distributed by Defendants.

**C. WeLib Is Not a Library of Any Kind; It Is a Pirate Site that Illegally Reproduces and Distributes Publishers' Literary Works on a Massive Scale**

38.    WeLib is a pirate site that reproduces and distributes works of authorship owned by others to its users for a profit, despite no authorization from or compensation to copyright owners.

13

39.      WeLib claims to be an "endless library."[10] While the moniker "shadow library" is sometimes used in reference to WeLib and other similar sites, calling it a library of any kind is incorrect. It is more accurate to refer to it as a shameless pirate site. Libraries are trusted institutions that serve the communities that fund them by lending books and other publications they have lawfully acquired. Using this label for WeLib explicitly misleads the public and allows WeLib to hijack the goodwill that libraries enjoy and have legitimately earned. WeLib is no more than a pirate website that reproduces and distributes works of authorship owned by others to users for a profit, without authorization from or compensation to the copyright owners.

40.      When WeLib launched in or around 2025,[11] the notorious pirate site Anna's Archive noted it as a "new entrant" in the piracy space.[12]  According to Anna's Archive, WeLib "mirrored most of [Anna's Archive's] collection" of stolen literary works, meaning WeLib copied the stolen literary works available through Anna's Archive in order to permit WeLib to distribute these same works through its own "Partner Server."[13] WeLib also "use[d] a fork of [Anna's Archive's] codebase," copying the code used to run Anna's Archive's websites.[14] WeLib copied over 150 million files from Anna's Archive in or around 2025, including the Works in Suit.[15] It is telling that WeLib modeled itself after Anna's Archive, whose website admits it "do[es]n't bother with . . . public domain books"[16] and "deliberately violate[s] the

---

[10] *WeLib-Public Homepage*, WELIB, https://welib-public.org (last visited June 11, 2026).

[11] https://web.archive.org/web/20250501000000*/welib.st.

[12] *Anna's Blog, An update from the team*, ANNA'S ARCHIVE (Aug. 17, 2025), https://annas-archive.gl/blog/an-update-from-the-team.html.

[13] *Anna's Blog, An update from the team*, ANNA'S ARCHIVE (Aug. 17, 2025), https://annas-archive.gl/blog/an-update-from-the-team.html.

[14] *Anna's Blog, An update from the team*, ANNA'S ARCHIVE (Aug. 17, 2025), https://annas-archive.gl/blog/an-update-from-the-team.html.

[15] *Anna's Blog, An update from the team*, ANNA'S ARCHIVE (Aug. 17, 2025), https://annas-archive.gl/blog/an-update-from-the-team.html.

[16] *Anna's Blog, The Critical Window of Shadow Libraries*, ANNA'S ARCHIVE (Jul. 16, 2024), https://annas-archive.gl/blog/critical-window.html.

copyright law in most countries," including the United States.[17] Anna's Archive itself began by mirroring the contents of two predecessor pirate sites: Z-Library and Library Genesis (or "LibGen"). A Court in this District recently found Anna's Archive liable for willful copyright infringement of Publishers' works and issued a permanent injunction against it after Anna's Archive defaulted.[18] Two federal courts similarly found LibGen liable for willful copyright infringement and issued broad permanent injunctions against further infringement.[19] As for Z-Library, the United States Department of Justice and Federal Bureau of Investigation brought criminal charges against two individuals accused of operating the pirate site and shortly thereafter seized over 200 Z-Library domain names.[20] By copying literary works from a Notorious Pirate Site, which in turn copied many of those same works from two other Notorious Pirate Sites, WeLib makes its illegal objectives clear.

41.    The scale of WeLib's infringement is stunning. Its stolen collection of books, journal articles, and other materials comprise over 150 million files in total. It boasts 43 million books and 98 million articles.[21] These infringing copies have attracted over 80,000 active monthly users.[22]  In just the last month, WeLib distributed over 51 million books to these users, and reproduced another 14 million books and articles as free downloads, in addition to untold numbers of books and articles distributed as part of paid, faster downloads.[23]

---

[17] *Anna's Blog, Introducing the Pirate Library Mirror: Preserving 7TB of books (that are not in Libgen)*, ANNA'S ARCHIVE (July 1, 2022), https://annas-archive.gl/blog/blog-introducing.html.
[18] See *Apress Media, LLC et al. v. Anna's Archive et al.*, Case No. 1:26-cv-01850-JSR, Dkt. 25 (S.D.N.Y. May 19, 2026).
[19] *See Cengage Learning Inc. et al. v. Does 1-50 d/b/a Library Genesis*, Case No. 23-cv-08316-CM (S.D.N.Y. Sept. 24, 2024), Dkt. 36; *Elsevier Inc. v. Sci-Hub*, No. 15-cv-4282 (RWS), 2017 WL 3868800 (S.D.N.Y. June 21, 2017).
[20] Two Russian Nationals Charged with Running Massive E-Book Piracy Website, U.S. ATTORNEY'S OFFICE, EASTERN DISTRICT OF NEW YORK (Nov. 16, 2022), https://www.justice.gov/usao-edny/pr/two-russian-nationals-charged-running-massive-e-book piracy-website.
[21] *Homepage*, WELIB, https://welib.org/ (last visited June 11, 2026).
[22] *WeLib-Public Homepage*, WELIB, https://welib-public.org (last visited June 11, 2026).
[23] *Donate*, WeLib, https://welib.org/donate (last visited June 11, 2026).

42.     WeLib has reproduced scores of Publishers' works. For example, a search for Publisher "Harper Collins" on the Website results in 36,417 search results. Of these search results, 36,341 (or 99.8%) are available from WeLib's own "Partner Server."  According to the Website, these infringing works originated from other notorious pirate sites, such as LibGen, Z-Library, and Anna's Archive:[24]

43.     Searches for the other Plaintiffs collectively result in millions of entries for infringing ebooks.  A search for "Springer Nature" resulted in 483,171 results, 454,789 of which are available directly from WeLib's Partner Server. A search for "Cengage Learning" resulted in 55,867 results, 55,798 of which are available directly from WeLib's Partner Server. A search for "Elsevier" resulted in 512,189 results, 489,107 of which are available directly from WeLib's

---

[24] *Search Results for "Harper Collins"*, WeLib, https://welib.org/search?sort=&index=&page=1&q=%22Harper+Collins%22 (last visited May 20, 2026).

Partner Server. A search for "John Wiley" resulted in 231,515 results, 226,775 of which are available directly from WeLib's Partner Server. A search for "Macmillan" resulted in 276,895 results, 273,292 of which are available directly from WeLib's Partner Server. A search for "McGraw Hill" resulted in 137,138 results, 136,896 of which are available directly from WeLib's Partner Server. A search for "Pearson" resulted in 124,629 results, 124,328 of which are available directly from WeLib's Partner Server.  A search for "Penguin Random House" resulted in 639,586 results, 638,970 of which are available directly from WeLib's Partner Server. A search for "Simon and Schuster" resulted in 42,908 results, 42,813 of which are available directly from WeLib's Partner Server. A search for "Taylor and Francis" resulted in 52,180 results, 51,284 of which are available directly from WeLib's Partner Server.

44.    As of the date of this filing, WeLib is available to users around the world, including in the United States, at welib.org, welib.st, and welib-public.org. The ".st" top-level domain is reserved for São Tomé and Príncipe, an island nation off the western coast of Central Africa. However, it is not necessary for a website operator to have any association with this country to acquire and use this domain name. Defendants anonymously registered these websites using various private, foreign domain registrars.

45.    None of the copyright-protected works on WeLib are licensed or authorized by the copyright owners; to the contrary, their reproduction and distributions are blatantly illegal infringements.

46.    Defendants distribute their stolen collection of literary works directly to users. WeLib invites users to search via a text box on the Website for files in its illegal repository of infringing works and provides links that allow users to download the files. For example, *The Corrections*, by Jonathan Franzen, is one of the Works in Suit and for which Macmillan

Publishers exclusively controls the reproduction and distribution rights in the United States. A search of WeLib results in an entry specifically for this work.[25] Selecting this entry then directs the user to a page with links to download a copy of this work through Defendants' Website, either through a free "slow download[]" or a "fast download[]" that requires payment:



---

[25] *Corrections: A Novel*, WELIB, https://welib.org/md5/d799a9d5b87d800640ea1b246828215f (last visited June 11, 2026).

47.    This entry notes metadata associated with the file, including the date the file was "open sourced," i.e., the first date on which it appeared on a pirate site. WeLib also lists the publishers of this work, none of whom WeLib has paid for the right to reproduce or distribute this work.

48.    WeLib also offers its users the ability to read the stolen copy directly on WeLib's website via separate "Read" links:[26]



49.    Defendants have mirrored the Anna's Archive collection, and the files WeLib provides to users come from servers Defendants control. Defendants state that slow downloads are "accessible through our waitlist – a system designed to give everyone fair access."[27] For paid users, WeLib alternatively provides "fast downloads."[28] Defendants can only implement these differentiated techniques on servers they control for files they host.

50.    That Defendants host the infringing content on their own servers is further illustrated through the files themselves. Returning to the example of *The Corrections*, clicking on the "slow download" link will open another page where a link to download the file appears after

---

[26] *Id.*
[27] *Id.*
[28] *Id.*

a short delay. The URL to download the file begins "https://s2.welib-public.org..." and

downloads directly from the Website with a single click:[29]





51.    To confirm WeLib was in fact distributing the Works in Suit, Publishers'

investigators downloaded a copy of each Work in Suit from the Website in June 2026. Each

Work in Suit was downloaded from WeLib successfully.

52.    Defendants appear to be located abroad. The IP address of the server that provides

downloads for the files hosted on the Websites is 176.97.123.166, which is an address issued by

an ISP in Ukraine. Defendants also rely on many foreign intermediaries, such as web hosts and

domain registrars, to operate the Website.

---

[29] *Download Corrections: A Novel*, WELIB,
https://welib.org/slow_download/d799a9d5b87d800640ea1b246828215f/0/0 (last accessed June 11, 2026).

53.    Defendants have used various tools and techniques to conceal their identities. Defendants fail to provide names or business addresses as contact information on their Website, as is customary for a legitimate business. Defendants also rely on proxy services that conceal their identifying information. According to WHOIS,[30] the Website is registered through the reverse proxy server Cloudflare. The WHOIS record for welib.st does not list an organization, phone, or fax number for the registrant of welib.st.  Instead, it only lists a "name" of "Host Master (STR6888FB3F98367)," an "email" of "whois@njal.la," and a "mailing address" of "Arthur L. Evelyn Building, Charlestown," which appears to be located on the Caribbean island nation of Saint Kitts and Nevis.  The WHOIS record for welib.org similarly does not list the registrant's name, organization, phone, or fax number.  It only lists an "email" of "https://tieredaccess.com/contact/a238f3d8-4798-4b0b-b603-6acc617b2359" and a "mailing address" of "Charlestown."[31] Despite Publishers' efforts to identify the operators of WeLib, their identities and locations are unknown.

## D.  Defendants Seek to Profit from Infringement, Including from LLM Developers

54.    Defendants profit directly from their mass infringement business. For the copyrighted content hosted directly by WeLib, download speeds for free users are typically very slow. However, in exchange for a "donation," users receive "fast downloads" and avoid waitlists. In reality, these "donations" are paid memberships. Given the volume of the pirated files WeLib encourages its users to download, buying this extra download speed is a practical necessity. WeLib accepts payment for these faster downloads through its "Donate" webpage.[32]  Its paid

---

[30] https://www.godaddy.com/whois/results.aspx?itc=dlp_domain_whois&domainName=welib.st (last accessed June 11, 2026).
[31] https://www.godaddy.com/whois/results.aspx?itc=dlp_domain_whois&domainName=welib.org (last accessed June 11, 2026).
[32] *Donate*, WELIB, https://welib.org/donate (last visited June 11, 2026).

subscriptions start at $7 per month for "25 fast downloads per day" and "25 fast reads per day."[33] On the higher end, for $90 a month WeLib offers "1000 fast downloads per day" and "1000 fast reads per day."[34]

55.     Because it knows its operations are illegal, it promises its users that "[y]our privacy and security are important to us" and that its third-party payment providers "maintain the highest security standards to keep your information protected."[35]  WeLib accepts payment using cryptocurrency, WeChat, Alipay, and other methods. WeLib uses the payment provider Malum.co, which advertises its services as "[c]omprehensive solutions designed for high-risk industries" that offer the ability to "[a]ccept card payments risk-free – no chargebacks, no questions asked."[36]

56.     WeLib has also been an illegal supplier of stolen content to the AI industry. In a recent lawsuit, publishers alleged that Meta utilized WeLib to train their Llama models.[37] Other pirate sites have publicly solicited the AI industry to purchase high-speed access to their collections. For example, Anna's Archive recently posted a blog to their Website entitled "If You're an LLM, Please Read This" which invites LLM developers to copy large amounts of data at fast download speeds by "making an enterprise-level donation."[38] The amount of the "enterprise-level donation" is not specified on the Website but it is reported to be $200,000. This enterprise-level piracy has exponentially magnified the harm Defendants' infringing acts have caused Publishers. WeLib has positioned itself to seek similar financial payments from the AI industry.

---

[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *About*, MALUM, https://malum.co/#about (last visited May 26, 2026).
[37] Complaint, *Elsevier Inc. v. Meta Platforms, Inc.*, Case No. 26-cv-3689 (S.D.N.Y. May 5, 2026), at ¶79.
[38] *Anna's Blog, If You're an LLM, Please Read This*, ANNA'S ARCHIVE (Feb. 18, 2026), https://annas-archive.gl/blog/llms-txt.html.

### E. Defendants' Infringement Is Knowing and Willful

57.    Defendants knowingly violate the law. WeLib does not merely link to literary works hosted by others, which alone would be illegal. Defendants have gone further, directly hosting content files for stolen books and journals, including the Works in Suit. In or around 2025, WeLib deliberately copied a collection of millions of stolen literary works from the Notorious Pirate Site Anna's Archive, whose operators proudly describe themselves as "pirates" not "bound by the law"[39] who "deliberately violate the copyright law in most countries."[40]  Like Anna's Archive, the pirates who operate WeLib remain anonymous and engage in their shamelessly illegal conduct outside the Nation's borders, knowing that their conduct has an impact within our country.

58.    Publishers and their authors have been the primary targets of WeLib's illegal conduct. As stated on its Website, WeLib was "founded on a simple principle: education and literature belong to everyone."[41] Despite the legal actions against its predecessors, which demonstrate its own conduct is illegal, WeLib continues to unlawfully distribute its stolen collection of literary works.

### F. Defendants' Conduct Harms Publishers

59.    Despite its claims to be a non-profit enterprise, WeLib is a for-profit commercial operation that has engaged in extensive reproduction and distribution of Publishers' works. It makes Publishers' works available on its Website to users for free, depriving Publishers of both

---

[39] *Anna's Blog, How to Become a Pirate Archivist*, ANNA'S ARCHIVE (Oct. 17, 2022), https://annas-archive.gl/blog/blog-how-to-become-a-pirate-archivist.html.
[40] *Anna's Blog, Introducing the Pirate Library Mirror: Preserving 7TB of books (that are not in Libgen)*, ANNA'S ARCHIVE (Jul. 1, 2022), https://annas-archive.gl/blog/blog-introducing.html.
[41] Homepage, WELIB, https://welib-public.org (last accessed June 11, 2026).

individual sales and license fees from developers who might be interested in a larger number of works.

60.    Defendants' unauthorized use of Publishers' works also denies them control over how their creative works are reproduced and distributed, rights guaranteed by the Copyright Act. It also undermines the incentive for authors to continue to produce literary works and for Publishers to invest in, support, and exploit those creative efforts. The sheer breadth and scope of WeLib's infringing conduct makes it effectively impossible to measure, calculate, or even estimate the financial damage it inflicts on Publishers.

61.    Defendants' unauthorized use also undercuts the existing and potential markets for Publishers' works as LLM training data and for myriad other uses and undermines those legitimate businesses and services that properly license these works.

62.    Accordingly, Publishers have been left with no choice but to file this lawsuit to put an end to Defendants' ongoing infringement of their rights and remedy the significant harm they have caused and continue to cause.

## CLAIMS FOR RELIEF

### Count I - Direct Copyright Infringement (17 U.S.C. § 101 *et seq.*)

63.    Publishers repeat and reallege each and every allegation contained outside of Count I as if fully set forth herein.

64.    The Works in Suit are original, creative, and copyrightable subject matter under the laws of the United States.

65.    The copyrights in the Works in Suit are registered, and the Copyright Office has issued valid Certificates of Registration for the Works.

24

66. Defendants have infringed and will continue to infringe Publishers' copyrighted works, including without limitation, the Works in Suit listed in Exhibit A hereto, by, *inter alia*, reproducing and distributing the Works in Suit.

67. Publishers have not provided Defendants with permission or consent to reproduce or distribute their copyrighted works, including without limitation, the Works in Suit listed in Exhibit A hereto.

68. The reproduction and distribution of Publishers' copyrighted works, including without limitation, the Works in Suit listed in Exhibit A hereto, constitute infringements of the Publishers' registered copyrights and their exclusive rights under 17 U.S.C. § 106(1) and (3).

69. Each infringing reproduction or distribution of Publishers' copyrighted works, including without limitation the Works in Suit listed in Exhibit A hereto, constitutes a separate and distinct act of copyright infringement.

70. Defendants have willfully, intentionally, and purposefully infringed Publishers' copyrighted works, including without limitation, the Works in Suit listed in Exhibit A hereto.

71. As a direct and proximate result of their wrongful conduct, Defendants have and will obtain benefits, including, but not limited to, profits to which Defendants are not entitled.

72. The extent of Publishers' losses arising from Defendants' illegal conduct is staggering. Publishers have suffered damages as a direct and proximate result of infringement by Defendants of their copyrights and exclusive rights. Publishers are entitled to statutory damages in the amount of up to $150,000 for each work willfully infringed pursuant to 17 U.S.C. § 504(c). Alternatively, at the election of Publishers, pursuant to 17 U.S.C. § 504(b), Publishers are further entitled to recover from Defendants the damages they have sustained and will sustain, as well as any gains, profits, and advantages obtained by Defendants as a result of their acts of

25

infringement alleged above. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Plaintiffs.

73.    Publishers should also be awarded their costs and reasonable attorneys' fees as the prevailing party pursuant to 17 U.S.C. § 505.

74.    Defendants' infringement has caused, and continues to cause, irreparable injury to Publishers in an amount not readily capable of determination and for which there is no adequate remedy at law. Thus, Publishers are also entitled to permanent injunctive relief prohibiting infringement of their copyrights and exclusive rights pursuant to 17 U.S.C. § 502.

**PRAYER FOR RELIEF**

WHEREFORE, Publishers respectfully request judgment against Defendants as follows:

A. Declaring that the practices of Defendants in connection with Publishers' Works in Suit constitute willful copyright infringement;

B. Issuing a permanent injunction (1) enjoining WeLib, and its agents, servants, employees, attorneys, successors and assigns, and all persons, firms, corporations, or others acting in active concert or participation with each or any of them, from directly or indirectly reproducing, distributing, publicly displaying, creating derivative works, or otherwise infringing any of the respective copyrighted works owned or exclusively controlled, in whole or in part, by Plaintiffs, whether now in existence or hereinafter created; (2) ordering that all unlawful copies of Plaintiffs' copyrighted works be destroyed; and (3) directing third-party internet registries, domain name registrars, data centers, and hosting and service providers to refrain from frustrating, and to reasonably assist in the implementation of, the relief described above, including without limitation by ceasing any hosting services for the websites located at welib.org, welib.st, welib-public.org, or

26

any other websites that host the infringing content or directly facilitate its distribution; by disabling the welib.org and welib-public.org domain names and making them inactive and untransferable; and by disabling the authoritative nameserver for the welib.st website and making it inactive and untransferable.

C. Entering judgment for Plaintiffs against Defendants for statutory damages pursuant to 17 U.S.C. § 504(c), in an amount based upon Defendants' willful acts of infringement of the Works in Suit, as alleged above, up to the maximum amount of $150,000 per infringed work;

D. Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505;

E. Awarding Plaintiffs pre-judgment and post-judgment interest, to the fullest extent available, on the foregoing; and

F. Granting such other further and different relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issues so triable in this action.

Dated: June 16, 2026

Respectfully submitted,

*/s/ Jennifer L. Pariser*
Matthew J. Oppenheim
Keith Howell (*pro hac vice forthcoming*)
**OPPENHEIM + ZEBRAK, LLP**
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Phone: (202) 480-2999
matt@oandzlaw.com
khowell@oandzlaw.com

Jennifer L. Pariser
**OPPENHEIM + ZEBRAK, LLP**
461 5th Avenue, 19th Floor
New York, N.Y. 10017
Phone: (212) 951-1156
jpariser@oandzlaw.com

*Attorneys for Plaintiffs*